IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

**HOPE WAGGONER and JAMIE TORRES,**
as individuals and on behalf of V.T., a minor,

    Plaintiffs,

v.                                                         No. 3:25-cv-00166

**THE NEW MEXICO CHILDREN, YOUTH
& FAMILIES DEPARTMENT and JACOB
TORRES, in his individual capacity,**

    Defendants.

## PLAINTIFFS' COMPLAINT

Hope Waggoner ("Ms. Waggoner") and Jamie Torres ("Jamie") on his own behalf and on behalf of minor child, V.T.[1] (collectively, "Plaintiffs"), through undersigned counsel, complain as follows against the New Mexico Children, Youth & Families Department ("CYFD") and Jacob Torres ("Jacob") (collectively, "Defendants").

## INTRODUCTION

1. CYFD purports to be New Mexico's child protective services agency. New Mexico's governor says the agency is "dysfunctional."[2] According to New Mexico's attorney general, CYFD hides its misdeeds behind a "cloak of secrecy," and has killed children in its care through its "complete[] and utter[] fail[ures]."[3] The problem has gotten so bad that the New Mexico legislature recently created a new agency with the sole function of protecting children from

---

[1] V.T. is referred to by her initials in this Complaint to protect her privacy.
[2] Dan Boyd, "Governor orders changes to 'dysfunctional' state child welfare agency," Feb. 16, 2023, Albuquerque Journal, https://www.abqjournal.com/news/local/article_30073c71-4ca8-55d7-89dc-1244bcab51a7.html
[3] By Esteban Candelaria, "Attorney general to launch investigation into child welfare system after teen's death," Apr. 22, 2025, Santa Fe New Mexican, https://www.santafenewmexican.com/news/local_news/attorney-general-to-launch-investigation-into-child-welfare-system-after-teens-death/article_a4ba5464-990e-480d-8e05-1e0a0ac032fb.html

1

CYFD.[4]

2.  One of the few positive things people could say about CYFD was that the agency could not harm children outside New Mexico's borders. But just as a mudslide drags down everything around it, CYFD's incompetence has now spilled over to neighboring states.

3.  This case arises because a CYFD investigator ventured into Texas and—based on "concerns" about a baby's El Paso home—abducted the baby and brought her to New Mexico against her parents' wishes. The baby spent the next month in CYFD foster care. During that time, CYFD did not even visitation to the baby's Texas-resident father. Eventually, a New Mexico state court dismissed CYFD's abuse and neglect petition because—of course—the State of New Mexico lacked jurisdiction over the baby.

4.  Plaintiffs now bring suit for damages under Texas, New Mexico, and federal law to make sure nothing like this ever happens again.

## PARTIES

5.  Plaintiff Hope Waggoner resides in Dona Ana County, New Mexico.

6.  Plaintiff Jamie Torres resides in El Paso County, Texas.

7.  V.T. is an infant residing with her father, Jamie Torres, in El Paso County. V.T.'s mother is Hope Waggoner.

8.  Defendant New Mexico Children, Youth & Families Department is a New Mexico state agency. It is headquartered in Santa Fe County, New Mexico.

9.  Defendant Jacob Torres is a CYFD investigator. On information and belief, he resides in Dona Ana County, New Mexico. He is sued in his individual capacity. He is not related to Jamie Torres.

---

[4] Margaret O'Hara, "As deadline looms, governor signs bills addressing child welfare, boosting teacher pay," April 11, 2025, Santa Fe New Mexican, https://www.santafenewmexican.com/news/legislature/as-deadline-looms-governor-signs-bills-addressing-child-welfare-boosting-teacher-pay/article_42cb4ce5-1dc7-42ff-aae7-bfcfe8a3811e.html

## JURISDICTION

10. This Court has personal jurisdiction because a substantial amount of the facts giving rise to this action occurred El Paso County, Texas, and Defendants targeted their misconduct toward Texas. Jurisdiction is also proper because Jamie and V.T. reside in El Paso County, Texas. Defendants have sufficient minimum contact with the State of Texas. This Court has subject matter jurisdiction because Plaintiffs allege a violation of federal law.

## ALLEGATIONS

11. On February 20, 2025, Jacob was dispatched from the CYFD office in Las Cruces on a routine assignment. Police officers in Socorro, Texas had detained a teenager who records showed was in CYFD custody. The teenager had run away from her foster home in New Mexico. So, it was Jacob's job to go down to Socorro, pick the teenager up, and bring her back to her foster home.

12. That teenager was Ms. Waggoner. She was seventeen years old and had been in CYFD custody for years. Ms. Waggoner had left her Las Cruces foster home to be with her infant daughter, V.T., and her daughter's father, Jamie, in El Paso.

13. Jacob arrived at the Socorro Police Department, where he found Ms. Waggoner along with V.T. The baby had been with Ms. Waggoner when she was detained, so officers had brought the baby with her to the police department.

14. V.T. lived with Jamie in El Paso. She had never been in CYFD custody.

15. Although New Mexico had no jurisdiction whatsoever over V.T., Jacob "checked over" V.T. The baby was clean and healthy. Next, Jacob asked Ms. Waggoner about the circumstances surrounding her detention. She said the police had been called during a verbal argument with V.T.'s father.

16. Jacob then asked the Socorro police officers if they had been in contact with Texas child protective services. The officers responded that Texas CPS had already arrived and left.

17. Instead of deferring to Texas CPS's judgment, Jacob decided it would be "contrary to the welfare of [V.T.]" for her to remain in Texas. So, Jacob loaded *both* Ms. Waggoner and V.T.

into his car and drove to Las Cruces. Along the way, Ms. Waggoner repeatedly asked Jacob to drop V.T. off at Jamie's house, but Jacob refused.

18. Upon arrival at the CYFD office in Las Cruces, Jacob separated V.T. from his mother and continued his investigation into whether Texas was the right place for V.T. to live. As part of this investigation, Jacob called various people to gather information about the verbal altercation in Texas that had precipitated Ms. Waggoner's detention.

19. Later in the day on February 20, 2025, Jamie learned that CYFD had taken his baby. Jamie called Jacob, and demanded that CYFD return V.T. During the call, Jamie made clear that he would not cooperate in Jacob's "investigation."

20. After speaking to Jamie, Jacob formally placed V.T. in CYFD's custody. Without notifying either of her parents, CYFD then sent V.T. to live with a foster family in Santa Fe.

21. The next day—February 21—Jacob called Jamie to inform him that, due to various "concerns" Jacob had about V.T.'s Texas home, the State of New Mexico had decided to keep V.T.

22. Jamie was, understandably, upset by this news.

23. On February 24, 2025, Ms. Waggoner called Jacob to ask what she could do to have her baby returned. Jacob explained that he would not permit Waggoner to have access to V.T., because he believed she would bring V.T. back to Texas.

24. V.T. remained in CYFD foster care for the next month. The custody petition filed by CYFD stated that V.T. could not be placed with any family members, as they all lived in "another state[.]" Jamie was denied visitation.

25. In late March, 2025, the New Mexico children's court dismissed CYFD's petition for lack of jurisdiction. V.T. was then returned to Jamie's custody.

**First Cause of Action**
**Violation of Civil Rights under 42 U.S.C. § 1983**
**(By all Plaintiffs)**
**(Against Jacob in his individual capacity)**

26. Plaintiffs incorporate by reference all allegations in this Complaint.

4

27. Jacob violated Plaintiffs' substantive due process rights to familial integrity by unlawfully removing and detaining V.T. without jurisdiction or justification.

28. Jacob also violated Plaintiffs' procedural due process rights by removing and detaining V.T. without adequate process or notice.

29. Additionally, Jacob committed an unlawful Fourth Amendment seizure when he removed and detained V.T. without jurisdiction or proper cause.

30. Jacob acted under color of law.

31. As a proximate result of Jacob's unconstitutional actions, Plaintiffs have suffered damages including emotional distress.

32. The rights Jacob violated were clearly established, such that Jacob is not protected from suit by qualified immunity.

33. Punitive damages are appropriate because Jacob acted maliciously, recklessly, or with callous indifference.

34. Plaintiffs are further entitled to reasonable attorney's fees and costs of suit.

**Second Cause of Action**
**False Imprisonment under Texas Law**
**(By V.T. through Jamie)**
**(Against Jacob in his individual capacity)**

35. Plaintiffs incorporate by reference all allegations in this Complaint.

36. Jacob willfully detained or restrained V.T. by loading her into a car and bringing her to New Mexico.

37. Neither V.T. nor her parents consented to the detention or transportation.

38. Jacob acted without legal authority or justification.

39. As a result of Jacob's actions, V.T. suffered harm including emotional distress.

40. Jacob's actions were malicious or grossly negligent, such that punitive damages are warranted.

**Third Cause of Action**
**Intentional Infliction of Emotional Distress under Texas Law**
**(By all Plaintiffs)**

5

**(Against Jacob in his individual capacity)**

41. Plaintiffs incorporate by reference all allegations in this Complaint.

42. Jacob acted intentionally or recklessly by abducting V.T. without jurisdiction and justification, bringing her across state lines, and placing her in CYFD custody.

43. Jacob's conduct was extreme and outrageous.

44. As a proximate result of Jacob's conduct, Plaintiffs suffered severe emotional distress.

45. Jacob's actions were malicious or grossly negligent, such that punitive damages are warranted.

### Fourth Cause of Action
**Tortious Interference with Parental Rights under Texas Law**
**(By Jamie and Ms. Waggoner)**
**(Against Jacob in his individual capacity)**

46. Plaintiffs incorporate by reference all allegations in this Complaint.

47. Jamie and Ms. Waggoner had a parent-child relationship with V.T.

48. Jacob intentionally interfered with Jamie and Ms. Waggoner's parental relationship with V.T.

49. Jacob acted without legal authority or justification.

50. As a proximate result of Jacob's conduct, Jamie and Ms. Waggoner suffered severe emotional distress.

51. Jacob's actions were malicious or grossly negligent, such that punitive damages are warranted.

### Fifth Cause of Action
**Negligence under Texas Law**
**(By all Plaintiffs)**
**(Against Jacob in his individual capacity)**

52. Plaintiffs incorporate by reference all allegations in this Complaint.

53. Jacob owed Plaintiffs a duty to act within his lawful jurisdiction and exercise reasonable care in matters pertaining to child protection.

54. Jacob breached that duty by detaining and removing V.T. from Texas without jurisdiction or justification.

55. As a proximate result of Jacob's negligent actions, Plaintiffs suffered damages including severe emotional distress.

56. Punitive damages are justified because Jacob's actions were grossly negligent.

### Sixth Cause of Action
### Violation of New Mexico Civil Rights Act
### (By all Plaintiffs)
### (Against CYFD)

57. Plaintiffs incorporate by reference all allegations in this Complaint.

58. The New Mexico Constitution secures rights including familial integrity, due process, and freedom from unlawful seizure.

59. CYFD is a public body as that term is used in the New Mexico Civil Rights Act, NMSA 1978, §§ 41-4A-1 to -13.

60. Jacob was acting on CYFD's behalf and under color of law when he kidnapped V.T. and transported her across state lines, in violation of Plaintiffs' rights to familial integrity, due process, and freedom from unlawful seizure.

61. CYFD acted under color of law when it took custody of V.T. and placed her in foster care for a month, in violation of Plaintiffs' rights to familial integrity, due process, and freedom from unlawful seizure.

62. As a proximate result of CYFD and Jacob's actions, Plaintiffs suffered damages including severe emotional distress.

63. Plaintiffs are further entitled to recover reasonable attorney's fees and costs of suit.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

64. A judgment requiring Defendants to pay actual damages, punitive damages, reasonable attorney's fees, expenses, and costs of suit.

65. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Date: May 8, 2025

**WGLA, LLP**

By: */s/ Curtis Waldo*
Curtis Waldo (State Bar No. 24090452)
Email: curtis@wglawllp.com
Telephone: 346-394-8056
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77002