**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

**HOPE WAGGONER and JAIME TORRES,
as individuals and on behalf of V.T., a minor,**

    **Plaintiffs,**

**v.**                                                                                   **No. 3:25-cv-00166**

**THE NEW MEXICO CHILDREN, YOUTH
& FAMILIES DEPARTMENT and JACOB
TORRES, in his individual capacity,**

    **Defendants.**

### PLAINTIFFS' OMNIBUS MOTIONS IN LIMINE

Plaintiffs Hope Waggoner ("Hope") and Jaime Torres ("Jaime") (collectively, "Plaintiffs") file this Omnibus Motion in Limine, and in support state as follows:

**MIL No. 1: No argument that V.T. is better off with CYFD, or that Hope and Jaime are bad parents generally to V.T. (FRE 401, 403)**

Defendants' counsel have made clear that Defendants intend to make the trial a referendum on Hope and Jamie's parenting skills. Throughout depositions, Defendants' questioning has revolved around issues like Jaime's criminal record, or Hope's history of drug use, the implication being that Defendants' violations of the law should be excused because V.T. was better off in a foster home in Santa Fe than when she was living with her father in El Paso. In other words, Defendants appear primed to argue at trial that "Jaime is bad," "Hope is unstable," and "therefore Jacob was right."

1

Defendants' claims about Jamie and Hope are dubious, but more importantly they are irrelevant.  Plaintiffs bring five causes of action against Jacob Torres that will go to the jury[1]:

(1) Section 1983/Fourth Amendment—did Jacob violate Plaintiffs' rights by transporting V.T. to New Mexico and then causing her to be placed in CYFD custody?

(2) false imprisonment—did Jacob unlawfully confine V.T. against her parents' wishes?

(3) intentional infliction of emotional distress—did Jacob intentionally inflict emotional distress on Plaintiffs by transporting V.T. across state lines and then depriving Jamie and Hope of custody?

(4) tortious interference with parental rights—did Jacob wrongfully interfere with Plaintiffs' right to familial association?;

(5) negligence—was Jacob negligent in believing he somehow had legal authority to take V.T.?

The jury instructions for these causes of action make no mention of the parents' moral character, or whether V.T. was better off with Jacob/CYFD than with her parents. Rather, the principal issues before the jury will be (1) whether Jacob acted pursuant to a valid court order; (2) whether Jaime or Hope consented to V.T. being taken into CYFD custody; and (3) whether exigent circumstances justified Jacob's actions.  *See*

---

[1] Plaintiffs also brought a sixth claim against CYFD, not Torres, under the New Mexico Civil Rights Act, but will dismiss that claim before trial and pursue it separately in New Mexico state court.

*Banks v. Herbrich*, 90 F.4th 407, 412 (5th Cir. 2024) ("[t]he Fourth and Fourteenth Amendments guarantee that 'the government may not seize a child from his or her parents absent a court order, parental consent, or exigent circumstances.'") (citing *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 435 (5th Cir. 2008)).

The only issue Jaime and Hope's fitness as parents could potentially be relevant to is exigent circumstances. Yet even that is a nonstarter because Jacob knew essentially nothing about Hope or Jaime at the time he took V.T., and at the time he caused V.T. to be in CYFD's custody.  In the Tenth Circuit, the existence of exigent circumstances is evaluated based on what the state actor objectively knew and observed at the time of the search or seizure, not on information discovered afterward.  *McInerney v. King*, 791 F.3d 1224, 1234 (10th Cir. 2015).

**MIL No. 2**:  **No reference to Plaintiffs' past drug use or alleged prostitution (FRE 401, 403, 404(b))**

During depositions, Defendants' counsel has highlighted records reflecting that in the past, Hope ingested illegal drugs and had sex with men in exchange for drugs.  Defendants' counsel has made similar insinuations with respect to Jaime doing drugs or being in trouble with the law.

These past acts are irrelevant.  That Hope and Jaime at one point ingested illegal drugs does not give CYFD a right to kidnap a child from out of state.  The past acts are also unduly prejudicial.  A juror might think that an addict should not be a parent, or an addict is a bad person, or something along those lines.

Putting aside Rules 401 and 403, delving into Hope's past is impermissible under Rule 404(b).  Defendants should not be allowed to present evidence of these other alleged acts.  Such evidence falls too much into the category of, "she's a bad person so she should not recover," or "she made a bad decision in the past, so maybe she did so here."  It would also confuse the jury as the trial would become about Plaintiffs' past actions and not about what happened on February 20, 2025.  The trial would devolve into what drugs Plaintiffs did, when, why, whether they are still addicted, when was the last time they did XYZ drug.  All of this is a sideshow to the real issues.

### <u>MIL No. 3</u>:  No reference to alleged domestic violence (FRE 401, 403, 404(b), 802)

Defendants made supplemental disclosures stating that CYFD witnesses Hannah Duron, Abigal Cordova, and Brianna Baca would testify about alleged domestic violence and/or physical abuse between Hope and Jaime.

Plaintiffs deposed those witnesses, and it turned out Defendants' disclosures were wishful thinking and not actually what these witnesses knew or would testify to.  Baca testified to Jaime hitting his mom once in defense of Hope, but she was not aware of any violence between Jaime and Hope.  **Exhibit A**, Baca Tr. at 23:10-25:24.  Cordova testified that a CYFD worker told her that someone said Jaime pushed Hope, but Cordova did not remember who that person was, and she did not know how the worker knew that, making this testimony inadmissible hearsay.  **Exhibit B**, Cordova Tr. at 22:16-24:5.  Duron testified she had no knowledge about violence between Hope

and Jaime, though she thought Hope seemed unhappy at times living at Jaime's family's house.  **Exhibit C**, Duron Tr. (Vol. 1) at 16:24-20:7.

Put simply, "Defendants have offered nothing, beyond innuendo and speculation, to establish objectively reasonable grounds of an emergency." *Cortez v. McCauley*, 478 F.3d 1108, 1124 (10th Cir. 2007).  They should not be permitted to use rumors and conjecture to suggest to the jury that—despite the lack of actual evidence—V.T. needed Jacob's assistance.

In addition to being untrue, the allegations of domestic violence are irrelevant.  Even if Jaime were violent *in Texas*, that does not give CYFD the right to invade Texas and take his baby away from him.

Similarly, Defendants should be precluded from offering evidence that is suggestive of domestic violence.  For example, while Cordova testified that someone told her Hope had some bruises once, that is both irrelevant and hearsay.  Cordova did not even know who this out-of-court declarant was, did not know if Hope ever was bruised, and did not know who was responsible.

Finally, Defendants should be precluded from introducing evidence of violence among Jaime's relatives.  Again, this is not relevant.  Even if Jaime's relatives at times acted violently, it does not give Defendants the right to take V.T.

<u>MIL No. 4</u>:  **No reference to Hope allegedly abandoning V.T. (FRE 401, 403)**

Defense counsel and CYFD's Ms. Duron have stated or implied during depositions that when Hope left for El Paso on February 21, 2025, she somehow abandoned V.T., so CYFD had no choice but to take V.T. into custody.

Defendants should be precluded from making this argument at trial.  First, it does not fit with the timeline.  By February 21, when Hope went to El Paso, CYFD had already assumed custody of V.T., in Las Cruces.  Hope's lack of presence in Las Cruces did not mean Hope abandoned V.T.  CYFD made sure of that when it took custody of V.T.  Indeed, by making this argument, CYFD is basically turning its own bad conduct into a defense.  "Hope abandoned her baby because we took the baby."  It is a non-sequitur.

Second, this argument overlooks that if Hope had taken V.T. with her to El Paso—if she had *not* abandoned her baby as defense counsel accuses her of doing—Hope would have been guilty of felony custodial interference, as V.T. was in CYFD custody at that point.

The bigger problem with this argument is it assumes Defendants had some right to take V.T. into their custody to begin with.  V.T. lived in El Paso with her father, and Jacob testified that, to his knowledge, V.T. had never been to New Mexico.  In short, this was a Texas baby with a Texas home—on whom at no point did Defendants have any right to pass judgment.[2]

<u>MIL No. 5</u>:  **No reference to mandatory reporting (FRE 401, 403)**

Defendants' CYFD witnesses have stated that they are mandatory reporters under New Mexico law.  Similar to a schoolteacher or nurse, if CYFD employees see evidence of child abuse, they have a mandatory duty under state law to report it.

---

[2] If it were a question, Plaintiffs would submit it is better for a three-month old infant to be in the care of her parents rather than a failing state agency, but again, the jury will not be asked to decide, "what was best for V.T.?" or any similar question.

Plaintiffs do not dispute that CYFD employees are mandatory reporters, but so what?  If CYFD employees had a concern about V.T., they could have reported it—to Texas Child Protective Services.  No one is saying they should not have done so.  But Defendants did not go that route—rather, they took custody of V.T. when they had no legal right to do so.[3]

Defendants should not be permitted to suggest to the jury that their status as mandatory reporters somehow vested them with legal powers they did not have.  One can see a confused juror thinking that if Defendants were mandatory reporters, maybe they also had an obligation to remove a baby from Texas and refuse to give it back.  But one does not follow from the other.  Again, this case is not about, "how was V.T. doing in Texas?"  It is about whether Defendants had a legal right to do what they did.

### MIL No. 6:  No reference to marijuana or other drugs in the home of Jaime's relatives in Texas (FRE 401, 403, 404(b))

At her deposition, defense counsel asked Ms. Duron several questions about marijuana found in Jaime's relatives' home in Texas.  Defense counsel pointed out that under Texas law, marijuana is illegal, the implication being Jaime was from a home full of lawbreakers and so perhaps his home was not suitable for V.T.

The Court should preclude Defendants from making this argument, and from making any reference to marijuana in Jaime's relatives' home.  First, Defendants do

---

[3] If anything, CYFD's lack of reporting points the other way.  If CYFD were so concerned about V.T.'s well-being, why not report her supposed abuse and abandonment?  Why take custody of V.T.?

not even know if this was Jaime's marijuana, or if he was aware of it. And second, the presence of marijuana in a home, by itself, does not make that home unsuitable for an infant. No one has suggested Jaime is a drug dealer, or that he lives with drug dealers, or that there was any drug-related violence in the home.

And most significantly, it was up to Texas' Child Protective Services officials—not Defendants—to investigate alleged drug use at a Texas residence and its effect if any on V.T. Even if there were 1,000 pounds of marijuana in Jaime's relatives house, that would not give CYFD authority to take V.T.

Finally, even if marijuana in Jaime's home were relevant (which it is not), mentioning it would be unduly prejudicial. Some jurors may think that Jaime is a bad person because one of his relatives may have had marijuana.

**MIL No. 7: No reference to Rule 19, to LCPD being a necessary defendant, or to LCPD somehow forcing CYFD to take custody of V.T. (FRE 401, 403)**

Defendants have tested a theory in depositions that because the Las Cruces Police Department ("LCPD") momentarily took custody of V.T. before handing her over to CYFD, LCPD is a necessary defendant under Rule 19.

First, Rule 19 and the concept of a necessary defendant are legal matters, not proper to be heard by a jury. Jurors do not know what Rule 19 is, or what a necessary defendant means, and they do not need to know.

Second, this legal theory has no factual support. In briefly taking custody of V.T. and transferring her to CYFD as they must do under NM Stat §§ 32A-4-6 and 7, LCPD was performing a routine function to facilitate a decision CYFD already made

to take V.T.  Put simply, LCPD acted at CYFD's request. And it was Jacob who supplied the February 25, 2025 affidavit that provided the basis for the transfer of custodial rights to CYFD.

It would be one thing if LCPD helped Jacob take V.T. from Socorro, or if LCPD participated in CYFD's decision-making process at Las Cruces CYFD headquarters, or if LCPD supplied the affidavit and not Torres, but there is no evidence of this and hence no basis to name LCPD as a defendant.  Indeed, it is hard to imagine how LCPD might be a defendant to any of Plaintiffs' causes of action and hence they cannot be a necessary defendant under Rule 19.

The bottom line is, if Defendants want to make LCPD an empty chair, they must identify something LCDP did.  Yet there is zero evidence anyone from LCPD made any determination about V.T., or took V.T. anywhere.  Jacob took V.T. from Texas.  CYFD (including Jacob) made the decision to take V.T. into its custody and petitioned the state court for that purpose.  Merely pointing to a form that says LCPD had custody for a brief period, as is contemplated by NM Stat §§ 32A-4-6 and 7, does not transform Defendants into passive observers.

### MIL No. 8:  No reference to Defendants' attorney Ray Romero as "Judge" (FRE 401, 403)

In depositions, defense counsel Mr. Carrillo has referred to his colleague, Ray Romero, as "Judge Romero" or "former Judge Romero."  Plaintiffs understand Mr. Romero is a former state court judge in New Mexico.  Mr. Carrillo has also stated that Mr. Romero will help him try this case.

To be fair to Mr. Romero, Plaintiffs do not recall Mr. Romero ever referring to himself as a former judge. (Plaintiffs do not recall hearing Mr. Romero say anything during the depositions). But if Mr. Romero does participate in the trial, the Court should preclude both Mr. Romero and Mr. Carrillo from referring to Mr. Romero as a judge or as a former judge. If the jurors hear Mr. Romero is a former judge, they may be inclined to view his arguments as deserving of extra consideration. Provided he meets the requirements to practice in the federal courts of Texas, Mr. Romero is welcome to help Mr. Carrillo try the case, but his capacity should be limited to that of an attorney, same as all other counsel. But at trial, there should only be one "judge" in the room.

**MIL No. 9: No argument that CYFD was trying in good faith to help V.T. (FRE 401, 403, Motion for Spoliation Sanctions)**

Defense counsel has implied during depositions that CYFD was stuck between a rock and a hard place, that Hope brought V.T. back to Las Cruces, and Defendants had to decide what to do with V.T. once she was there. But this argument is based on a series of false premises. First, it was Jacob Torres, not Hope, who brought V.T. to New Mexico. Second, CYFD did not have jurisdiction to decide what to do with V.T. CYFD's assessment of V.T. was irrelevant. If Defendants are permitted to make this "damned if they do, damned if they don't" argument, it will only confuse jurors. Defendants could have returned V.T. to Jaime. Defendants could never have taken custody of V.T. to begin with and simply let V.T. remain in Hope's custody. They did neither. The "rock and a hard place" argument is simply false.

Put another way, this is not a case where CYFD determined V.T. was abused or neglected and Plaintiffs argue she was not. CYFD never had the authority to make the abuse or neglect determination to begin with. Plaintiffs readily agree CYFD investigators make tough calls all the time about whether to take children from their home. That is not what this case is about, and to the extent Defendants make it seem like it is, the jury will be confused.

In addition, for the reasons described in Plaintiffs' separate Motion for Spoliation Sanctions, Defendants should not be able to argue they attempted in good faith to comply with the law, at all, as Defendants destroyed or allowed to be destroyed the contemporaneous evidence of their discussion about this very subject.

**MIL No. 10:  No evidence acquired after seizure (FRE 401, 403)**

Defendants seized V.T. on February 20, 2025, yet at times have referenced evidence they only learned of after that date to justify their actions. For instance, Defendants' counsel referenced marijuana found in Jaime's relatives' home. But this was not known to Defendants on February 20 and hence cannot form the basis for their decision.

Under the Fourth Amendment, the reasonableness of a seizure is based on evidence known to the state at the time of that seizure. *Banks v. Herbrich*, 90 F.4th 407, 413 (5th Cir. 2024) (in child removal Fourth Amendment case, court will "focus[] on the information known to defendants at the time they made the decision to remove the children from the home"); *see also Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007) (Fourth Amendment inquiry is objective based on actual facts known at the

time).  Defendants should be precluded from using this later acquired evidence to justify their actions.

**MIL No. 11:  Limited effect of February 26, 2025 *ex parte* Order (FRE 401, 403)**

The New Mexico state court issued an *ex parte* order on February 26, 2025, permitting CYFD to retain custody of V.T.  The state court later reversed that order on or around March 17, 2025, holding it had no jurisdiction under New Mexico law.

Defendants should be precluded from arguing that the *ex parte* order was a judicial affirmation of their actions.  It was not.  The February 26 order was essentially a preliminary order keeping in place the illegal status quo, based on the representations made by Jacob. When the state court learned that V.T. had no connection to New Mexico and that no abuse or neglect was alleged to have occurred in New Mexico, it dismissed the case.

Plaintiffs are not saying the parties cannot reference the February 26 order, at all.  Defendants did seek the order, *ex parte*.  They took that risk.  The court agreed to go along with Defendants for a limited period.  But Defendants should not be able to use those events and tell the jury that the state court's granting the *ex parte* order somehow meant the court agreed with or affirmed Defendants' actions when the opposite is true.

**MIL No. 12:  No legal opinions by CYFD witnesses (FRE 401, 403, 702)**

CYFD witnesses have at times opined on what CYFD is entitled to do, or what it may do under state law.  These witnesses are not lawyers.  They are not experts. They are free to testify to what they did and why they took those actions, but they

should not be permitted to testify as expert witnesses about CYFD's legal duties, or to testify that their actions were in compliance with legal duties. It will be this Court that instructs the jury on the law of what CYFD can and cannot do. CYFD's witnesses should not replace the Court's role in that regard.

**MIL No. 13:  No evidence that Texas authorities told CYFD to take V.T. (FRE 401, 403)**

Discovery shows that Texas CPS was notified about V.T. while V.T. was at the Socorro police station, before Jacob Torres arrived. There is no evidence, however, that Texas CPS made any sort of determination about V.T., and no evidence that Texas CPS suggested that CYFD should take V.T. If anything, the opposite is true. That Texas CPS was notified about V.T. and did not take her into its custody suggests Texas CPS thought V.T. should remain with one or both of her parents.

Defendants should be precluded from arguing that Texas CPS gave Defendants permission to take V.T. There is simply no evidence for this. It would be highly confusing and misleading to the jury for Defendants to argue that Texas CPS somehow outsourced decisions about V.T. to Jacob or to CYFD. That is not what happened.

The parties may mention Texas CPS, but only for the (accurate) proposition that Texas CPS was notified about V.T., and that Texas CPS did not take V.T. into its custody. Similarly, Defendants should be precluded from arguing that the Socorro police gave CYFD permission to take V.T. There is no evidence of this, either. And even if they had, the Socorro police department had no right to do so.

13

**MIL No. 14:  No argument that qualified immunity means Jacob Torres acted lawfully or in good faith (FRE 401, 403, 702)**

Jacob Torres has asserted qualified immunity as a defense.  In the Fifth Circuit, "[t]he jury decides the factual question of whether the [state actor] violated the plaintiff's rights—the first step of the qualified immunity analysis." *Ramirez v. Killian*, 113 F.4th 415, 429 (5th Cir. 2024).  The jury does *not* decide "the purely legal question of whether the officer's actions were objectively reasonable in light of clearly established law—the second step." *Id.*

Under this precedent, Defendants should be limited to arguing *facts* to the jury. Defendants should not be permitted to argue that Jacob Torres is entitled to any sort of deference in finding these facts.  And Defendants should not be permitted to argue to the jury that the law was not clearly established, or anything of the sort.  This would be confusing, and would intrude on the Court's role.

Date:  July 6, 2026

**Respectfully submitted,**

**WGLA, LLP**

By:*/s/ Curtis Waldo*_____
Curtis Waldo
curtis@wglawllp.com
Benjamin Gubernick
ben@wglawllp.com
Telephone: 346-394-8056
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77002

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2026, I caused the foregoing document to be served on counsel of record and filed with the Court.

__*/s/ Curtis Waldo*_____
Curtis Waldo

## CERTIFICATE OF CONFERENCE

I hereby certify that I sent a draft of this Motion to opposing counsel and requested Defendants' position.  Defendants did not respond.

__*/s/ Curtis Waldo*_____
Curtis Waldo