**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

**HOPE WAGGONER and JAIME TORRES,**
**as individuals and on behalf of V.T., a minor,**

**Plaintiffs,**

**v.** **No. 3:25-cv-00166-RFC**

**JACOB TORRES,**
**in his individual capacity,**

**Defendant.**

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OMNIBUS MOTION IN LIMINE (DKT. 53)**

Plaintiffs Hope Waggoner ("Hope") and Jaime Torres ("Jaime") (collectively, "Plaintiffs") respond as follows to Defendant's Omnibus Motion in Limine (Dkt. 53, "Def. Mot." or the "Motions"):

**A. The Court should strike the Motions or deny them without prejudice for failure to comply with the order governing pretrial submissions.**

As a preliminary matter, the Court should decline to consider the Motions due to Defendant's noncompliance with the Court's June 6, 2026, Order on Pretrial Submissions (Dkt. 45). The order required that, "[p]rior to filing any motion in limine, the parties shall MEET AND CONFER in a good-faith attempt to resolve the request by agreement." *Id.* at 1. Moreover, the order required the movant to, "for each request, certify: (1) that the parties conferred in a good-faith attempt to resolve the matter by agreement; (2) whether the request is opposed or unopposed; and (3) the specific

reason that no agreement could be made." *Id*. Local Rule CV-7(G) also requires conferral before any non-dispositive motion.

The Motions do not comply with any of those requirements. The motions in limine are not accompanied by any certifications of conferences, which is understandable, as Defendant failed to confer with Plaintiffs on any of them.

This is not a technical nitpick. The whole point of conferral is to narrow and identify disputed issues. As discussed more below, Defendant's decision to skip conferral has yielded predictable results—garbled requests that create unnecessary work. Had the parties conferred, most of Defendant's motions in limine could have been avoided, narrowed, or at least made more intelligible.

### B. Motion In Limine No. 1 ("MIL No. 1")

Defendant's first motion in limine seeks an order "bar[ring] the Plaintiffs' witnesses from offering lay opinion testimony[.]" Def. Mot. at 1. But that makes no sense. "[I]t has always been the rule that lay opinion testimony may be elicited … if it is based on the witness's first-hand knowledge or observations." *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 685 (5th Cir. 2003). Adding to the confusion, towards the end of MIL No. 1, Defendant appears to limit its motion to opinions based on "scientific, technical, or other specialized knowledge[.]" Def. Mot. at 2. In other words, no expert testimony from lay witnesses. Which is already the rule.

Rather than speculate about what Defendant is asking for here, the Court should simply deny MIL No. 1.

**C. Motion in Limine No. 2 ("MIL No. 2")**

Next, Defendant seeks to "prevent[]" Plaintiffs "from introducing evidence of remedial measures taken after the incident which would have make the alleged injury less likely to occur, settlement offers and discussions, or promises of payment, and liability insurance." Def. Mot. at 3. MIL No. 2 does not identify any remedial measures Defendant has implemented. And even if Defendant had implemented remedial measures, the requested relief is too broad, as Federal Rule of Evidence 407 "provides that evidence of such remedial measures may be admissible for certain purposes, including impeachment." *Kirkland v. Marriott Int'l, Inc.*, 416 F. Supp. 2d 480, 489 (E.D. La. 2006).

MIL No. 2's reference to a "product design defect" (Def. Mot. at 3) is telling given this case has nothing to do with products. It suggests this motion in limine was simply copied-and-pasted from another case, with no real thought given to how it applies here. Neither the Court nor Plaintiffs are required to do Defendant's work for him, and MIL No. 2 should be denied.

**D. Motion in Limine No. 3 ("MIL No. 3")**

Defendant's next motion in limine invokes Federal Rule of Evidence 615(a)'s witness-exclusion rule. Plaintiffs do not oppose the request but ask that the Court likewise exclude Defendant's nonparty witnesses from the courtroom.

**E. Motion in Limine No. 4 ("MIL No. 4")**

MIL No. 4 seeks an order barring Plaintiffs from using the word "'custody' … without specifying whether they mean legal custody or physical custody[.]" Def. Mot.

at 6. Defendant thinks his proposed approach will "prevent undue confusion", *id.*, but the opposite is true.

**1. Custody is distinct from physical control.**

Defendant implies in MIL No. 4 that legal custody and physical custody are two distinct gradations of custody. Def. Mot. at 6-7 ("[O]nce [Defendant] established contact … V.T. was arguably in Defendant['s] physical custody, [however] V.T. was not in Defendants' legal custody until after they had been willingly transported to New Mexico."). But this is not correct. Under settled law, the concept of "custody" (whether physical or legal) refers to *custodial power*, *i.e.*, the *scope of a custodian's right to control*.

Legal custody refers to the authority and responsibility to make major decisions concerning a child's health, education, welfare, and upbringing. Whereas physical custody refers to authority and responsibility over a child's day-to-day supervision and care. These are distinct sets of rights—together, they form the umbrella of "custody."

Importantly, a guardian does not have to be in the same physical place as a ward to have custody. For example, a parent does not lose custody of a child when a child is at a friend's house on a sleepover, or staying at grandma's house. *Maldonado v. Josey*, 975 F.2d 727, 732-33 (10th Cir. 1992) ("Thus, [a]lthough a child may well be in the 'custody' of ... school authorities during school hours, this custody does not amount to a restraint that prohibits the child and his parents from caring for the

basic needs of the child."). The child's parents can remove a child from a school or terminate a sleepover at any time, for any reason.

To use another example, say a predator snatches a child off the street, tosses the child in the back of a van, and drives off. It would be absurd to say the kidnapper "took custody" of the child. All the kidnapper did was exert physical *control* over the child. The kidnapper has no right to make decisions about any aspect of the child's life.

So, Plaintiffs agree with Defendant that legal custody is different from physical custody, but only insofar as the terms refer to different sets of custodial rights. But by default, parents have custody of their children—*i.e.*, physical *and* legal custody. As long as no custodial rights have been transferred to a third party, it would be misleading to require prefixing the word custody with physical or legal.

**2. Defendant's proposal is not supported by New Mexico or Texas law.**

Defendant was employed by New Mexico's CYFD, and most of his decisions and actions regarding V.T. were made in New Mexico. Under New Mexico law, when a child is in CYFD's custody, CYFD has the "right to determine where and with whom" the child will live, and the "right and duty to protect, train and discipline the [Children] and to provide the [Children] with food, shelter, personal care, education and ordinary and emergency medical care[.]" N.M. Stat. Ann. § 32A–1–4(T). In other words, once CYFD has legal custody, it has *all* custodial rights over that child, including those that fall under the ambit of "physical custody." That is why, in

jurisdictions like New Mexico, "Courts have typically ... treat[ed] the custody analysis as an all-or-nothing inquiry." *Smith v. D.C.*, 413 F.3d 86, 96 (D.C. Cir. 2005).

As CYFD's own bench book[1] explains, the term "physical custody" is essentially meaningless under New Mexico law:

> The term "legal custody" is defined in the Children's Code. It should be read in harmony with the definitions of "guardian" and "parent." Whoever has legal custody of a child is empowered to make decisions regarding, among other things, where and with whom the child shall live, that is, the physical placement of that child. If legal custody is given to CYFD, placement is in the discretion of CYFD and not the court; CYFD's placement decisions are reviewable by the courts under the abuse of discretion standard. *The term "physical custody" can confuse the two concepts and is no longer used*.

*See* Exhibit A at Section 3.5 (emphasis added). Under New Mexico law, at any given time a child either is or is not in CYFD custody. Requiring Plaintiff to prefix the term with "physical" or "legal" is redundant, legally erroneous, and serve only to confuse the jury.

Defendant cites definitions of legal and physical custody from Chapter 152 of the Texas Family Code, but Chapter 152 does not change the above or otherwise suggest that Texas law is materially different from New Mexico law in this respect. Under Chapter 152.102(11), "legal custody" means managing conservatorship—custodial power over the child. Under Chapter 152.102(14), "physical custody" means actual physical care and supervision. The concepts are separated because a court can

[1] https://childlaw.unm.edu/assets/docs/2018-child-welfare-handbook.pdf (excerpt at page 56) (last visited Aug. 7, 2026).

assign different sets of rights to different people. *E.g.*, divorced parents could share legal custody of a child, even though only one parent has physical custody.

***

In the child protective services context, the word "custody" is a term of art. Its meaning and usage have been refined, over decades, through hundreds of judicial opinions from many jurisdictions. Defendant says Plaintiffs have been careless in their use of the term "custody," but MIL No. 4 makes clear it is Defendant who has no idea what this term means. "Physical custody," in the context of this case, is largely irrelevant. When Defendant placed V.T. in his car and drove to Las Cruces, he did not have any custodial rights over V.T. Later that day, however, when Defendant took V.T. into state custody, *all* the custodial rights that formerly belonged to Hope and Jaime shifted over to CYFD and its agents. Hope and Jaime only regained those rights when the children's court dismissed the case for lack of jurisdiction.

**F. Motion in Limine No. 5 ("MIL No. 5")**

On March 17, 2025, the New Mexico children's court dismissed Defendant's petition for custody over V.T. The dismissal order, which is attached as Exhibit A, states (1) the "Court does not have jurisdiction over [V.T.] … or [Jaime]"; (2) the "Children, Youth and Families Department admits to not having jurisdiction"; and (3) "New Mexico is not the home state of child." It further orders V.T. to be "immediately returned" to her parents.

MIL No. 5 seeks to keep that order from the jury.[2] However, the arguments Defendant musters in support of that request mangle federal precedent and the Rules of Evidence and should be rejected.

**1. The March 17 order is relevant to the events, causation, and damages.**

As a starting point, the order is part of the sequence of events at the center of this case. It explains when and why CYFD relinquished custody of V.T., bears directly upon the duration of the separation challenged by Plaintiffs, and provides necessary context for Plaintiffs' causation and damages evidence.

Defendant himself places the New Mexico custody proceedings at issue. He contends that CYFD operated pursuant to an initial *ex parte* order and complied with the March 17 order once it was entered. Defendant cannot present the initial order as justification for the continued custody of V.T. while suppressing the order that terminated that asserted authority. Doing so would leave the jury with a materially incomplete and misleading account.

That is especially true because Plaintiffs' Section 1983 claims is based, in part, on the theory that the *ex parte* order would not have been signed if Defendant had provided the court with complete information. The March 17 order of dismissal supports that inference.

[2] Although the heading also references "pleadings," "dismissed claims," and "attorney conduct," Defendants identify no particular pleading, claim, or attorney conduct they seek to exclude and offer no supporting analysis concerning those subjects.

### 2. The order is not hearsay when offered for its existence and legal effect

Defendants' hearsay argument incorrectly assumes that Plaintiffs will offer the March 17 order to prove every factual statement nested within it. Not so. The order is admissible to establish its existence, its operative legal effect, and the resulting return of V.T. to Hope and Jaime. *United States v. Parry,* 649 F.2d 292, 295 (5th Cir. 1981) ("an out-of-court statement … offered for some purpose other than to prove the truth of the matter asserted … is not subject to attack as hearsay.").

Here, the order "has legal reality independent of the truth of any statement contained in it. … The admission of [the order] to prove the operative fact of that [the order's] existence thus cannot be the subject of a valid hearsay objection." *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994). *See also*, Fed. R. Evid. 801, Note to Subdivision (c) (noting that hearsay does not include "the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights.").

And even if the order could somehow be categorized as hearsay, it would still be admissible under Rule 807's residual exception. *See e.g., Jones v. Cannizzaro*, No. CV 18-503, 2019 WL 2289470, at *7 (E.D. La. May 28, 2019) ("The rulings Plaintiff seeks to introduce at trial consist of the findings of fact and law by members of the federal and state judiciary. … These rulings have at least the same level of trustworthiness as other hearsay exceptions.").

**3. Defendant's qualified immunity argument misunderstands the law.**

MIL No. 5 is right about one thing: the March 17, 2025 order cannot establish what rights were clearly established in February of 2025. The problem is Defendant then makes the opposite argument—that the order's "very existence" proves the governing rights were not clearly established. Def. Mot. at 9.

Section 1983 creates a cause of action for violations of clearly established *federal* constitutional rights. State court orders can neither create nor negate clearly established federal law. Moreover, identifying whether a legal rule is clearly established is a question for this Court, not the jury:

> The jury decides the factual question of whether the officer violated the plaintiff's rights—the first step of the qualified immunity analysis. It does not decide the purely legal question of whether the officer's actions were objectively reasonable in light of clearly established law—the second step.

*Ramirez v. Killian*, 113 F.4th 415, 429 (5th Cir. 2024). Accordingly, neither party should be permitted to make any arguments to the jury about whether law was clearly established. Indeed, the Court should instruct the jury that the entire inquiry is reserved for the judge.

Date: August 7, 2026

**Respectfully submitted,**

**WGLA, LLP**

By: */s/ Curtis Waldo*
Curtis Waldo
curtis@wglawllp.com
Benjamin Gubernick
ben@wglawllp.com
Telephone: 346-394-8056
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77002

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2026, I caused the foregoing document to be served on counsel of record and filed with the Court.

*/s/ Curtis Waldo*
Curtis Waldo