ENDORSED COPY

FILED IN
FEB 25 2025
DISTRICT COURT,
DONA ANA COUNTY, NM

STATE OF NEW MEXICO
COUNTY OF DONA ANA
THIRD JUDICIAL DISTRICT
IN THE CHILDREN'S COURT

STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH AND FAMILIES DEPARTMENT

In the Matter of
Valeria Torres, a Child,

No. D-307-JQ-2025-00005
Judge: Grace B. Duran

and Concerning

Hope Waggoner and Jaime Torres, Respondents.

**MOTION FOR EX PARTE CUSTODY ORDER**

Petitioner respectfully requests that the Court issue an ex parte custody order based on the affidavit for ex parte custody order, which is attached and made part of this motion. In support of this motion, Petitioner states as follows:

1. The facts stated in the affidavit establish probable cause to believe Valeria Torres has been abused and neglected, that custody under the criteria set forth in Section 32A-4-18 NMSA 1978 is necessary, and that it would be contrary to the welfare of the child, Valeria Torres to remain in the home.
2. The Children, Youth and Families Department (CYFD) has made reasonable efforts to prevent the removal of the child, Valeria Torres, from the home.
3. It is necessary for the protection and in the best interests of the child, Valeria Torres, that they either be placed in the custody of CYFD or remain in the custody of CYFD pending further order of the Court.

Respectfully submitted,

Chrystian J. Gonzalez, Esq.
Children's Court Attorney
Children, Youth, and Families Department
2805 N. Roadrunner Pkwy.
Las Cruces, NM 88011
Direct: (575) 373-5946
chrystian.gonzalez@cyfd.nm.gov

EXHIBIT
tabbies
11

STATE OF NEW MEXICO
COUNTY OF DONA ANA
THIRD JUDICIAL DISTRICT
IN THE CHILDREN'S COURT

STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH AND FAMILIES DEPARTMENT

No. __________

In the Matter of
Valeria Torres, a Child, and Concerning
Hope Waggoner and Jaime Torres, Respondent(s).

**AFFIDAVIT FOR EX PARTE CUSTODY**

STATE OF NEW MEXICO )
) ss.
COUNTY OF DONA ANA )

I, Jacob Torres, being duly sworn, under oath, state as follows:

(1) This affidavit pertains to the child listed below:

| Child | Date of Birth |
|---|---|
| Valeria Torres | 11/20/2024 |

(2) I state the following facts to establish probable cause to believe Valeria Torres has/have been abused and neglected, that custody under the criteria set forth in Section 32A-4-18 NMSA 1978 is necessary, and that it would be contrary to the welfare of the child(ren) to remain in the home:[1]

i. Valeria Torress' mother is Hope Waggoner. Ms. Waggoner date of birth is 2/27/2008. Ms. Waggoners' number is 915-613-6231. Ms. Waggoner is currently a minor under the custody of the State of New Mexico for approximately 2 years.

ii. Valerias father is Mr. Jaime Torres. Mr. Torres' date of birth is 6/13/05. His phone number is 915-760-1088.

iii. On February 20th, 2025, this investigator received a emergency report for lack of supervision. Ms. Waggoner is under state custody and is the reason she was to be turned over to the state of New Mexico. This investigator met with Ms. Waggoner at the Socorro Police Department and met with the victim advocate, Lorenza Elias. Ms. Elias let worker know the incident is currently under investigation. Investigator was able to get a visual and checked over Valeria Torres. She was clean and healthy with no visible marks or bruising. Due to her age, she was unable to interview. At this time Ms. Waggoners looked upset when interviewing. Ms. Waggoner stated that there was a verbal altercation had started between Mr. Jaime Torres and his parents she stated was "stupid" but did not

want to expand on it. She did not give any more information at that time. This investigator asked Ms. Elias about Texas CPS but Ms. Elias stated they were at the station earlier in the morning but left soon after the report to New Mexico was made. Ms. Elias then helped Ms. Waggoner to the car to be released into this investigators custody.

iv. On February 20th, 2025, this investigator drove back to Las Cruces with Valeria and Ms. Waggoner. Ms. Waggoner disclosed more that had happened last night. Ms. Waggoner stated she was in the process of Mr. Torres's stepmother taking custody of her but stated she felt she was being "kidnapped", and they only wanted her baby. Ms. Waggoner then disclosed that she would run away and go back to Texas the first chance she got but did not say when.

v. On February 20th, 2025, this investigator spoke with Permeancy worker Ms. Hannah Duron. Ms. Duron stated she is assigned to Ms. Waggoner that often as she often on runaway status from CYFDs custody, but she does keep in contact with Ms. Waggoner over the phone when she is in crisis. Ms. Waggoner has been on runaway status Ms. Duron stated she is constantly leaving New Mexico to stay with Mr. Torres in El Paso, TX. Ms. Duron stated there have been disclosures of domestic violence between Ms. Waggoner and Mr. Torres and has shared her concerns. Ms. Duron disclosed Ms. Waggoner has a history of drug use including cocaine, fentanyl and marijuana.

vi. On February 20th, 2025, this investigator spoke to Natalia Figueroa, Mr. Torres' stepmother who was present during the incident. Ms. Figueroa stated she was helping Ms. Waggoner in a van when Mr. Torres came up to them and started a verbal argument. Mr. Torres then pulled out a knife and physically threatened her with it. Mr. Torres then grabbed Valeria from Natalia arms and threw her in the van. Mr. Torres then grabbed Ms. Waggoner and forced Ms. Waggoner into the van. Mr. Torres also got a stroller and forced it into the van and it caused Ms. Waggoner to get hit by the stroller. Mr. Torres then left the residence with Ms. Waggoner and Valeria in the van. The knife was seen in the van by law enforcement when the van was pulled over shortly after for a felony stop. Ms. Figueroa stated she has had conversations with Ms. Waggoner about the domestic violence where Mr. Torres does physically assault Ms. Waggoner. Ms. Figueroa stated he had assaulted her while she was pregnant. Ms. Figueroa has concerns for Mr. Torres being around then as she stated he is mentally unstable. Ms. Figueroa stated he has been in and out of psychiatric hospitals and does have a criminal history and a history of drug use.

vii. On February 20th, 2025, this investigator was contacted by Mr. Torres. Mr. Torres denied any domestic violence, stating he went to the home to pick up Ms. Waggoner and Valeria since they were staying only to visit the family. Mr. Torres denied there being a weapon during that time and would not cooperate when this investigator would ask more questions. Mr. Torres did not give any more information.

viii. On February 20th, 2025, this investigator received custody from Officer Loya #1119 of Las Cruces Police Department due to the concerns of the domestic violence and history

of fleeing custody. Ms. Waggoner Hope was notified in person and was given the concerns listed above.

ix. On February 21st, 2025, this investigator contacted Mr. Torres and notified him and let him know the reason for the custody of Valeria. Mr. Torres became verbally aggressive over the phone by threatening and cursing. Mr. Torres continued to deny domestic violence, or any weapons being used. Mr. Torres then hung up on the worker.

x. On February 21st 2025, Hannah Duron and Vanessa Gouveia informed this investigator that Ms. Wagoneer has left her placement and is now on runaway status leaving Valeria behind with another resource family. Ms. Duron is concerned that she has gone back to El Paso, TX to go back to Mr. Torres.

xi. On February 21st, 2025, this investigator contacted Ms. Elias with Socorro PD. Ms. Elias stated Ms. Waggoner did not disclose anything else about the incident. Ms. Waggoner only stated that she does not think the incident was of any importance. Ms. Elias stated she had tried to help Ms. Waggoner but Ms. Waggoner was not receptive to anything she was saying and denied any assistance. Ms. Elias stated Ms. Waggoner had been living with Mr. Torres for a year but did not give any details of where or the conditions of the home.

xii. On February 21st, 2025, Fostering Connections worker Irene Baca talked to Ms. Waggoner over the phone. Mrs. Baca texted Ms. Waggoner to check on her and Ms. Waggoner called Mrs. Baca. Ms. Waggoner continued to deny any altercations or incidents the past few days. During the call, Irene was able to hear Mr. Torres talking to Ms. Waggoner and they continued to deny the events that had happened but did confirm that they were in El Paso. Irene stated Ms. Waggoner and Mr. Torres blame Ms. Figueroa for what is currently happening.

xiii. On February 24th, 2025, this investigator was contacted by Ms. Waggoner. Ms. Waggoner was asking how and when she would be able to get her baby back. This investigator discussed concerns with Ms. Waggoner about leaving Las Cruces and that that question could not be answered at this time but will talk to Mr. Torres and get back to the worker. Ms. Waggoner did confirm that she is in El Paso. During the entirety of the call, this investigator could hear Mr. Torress' voice whispering to Ms. Waggoner. Ms. Waggoner denied that it was Mr. Torres but this investigator continued to hear Mr. Torres' voice.

xiv. On February 25th, 2025, Ms. Duron notified this investigator about medical Neglect for Valeria. Hannah conformed with the Ms. Waggoners care coordinator Angel Villanueva. Mr. Villanueva stated he does not see any appointments or immunizations for Valeria since the day of her birth and now have concerns since she has not been seen regularly by a medical professional.

(3) I state that the Children, Youth and Families Department (CYFD) has made the following reasonable efforts to prevent the removal of the child from the home:[2]

- CYFD tried to safety plan, but there are no family members or fictive kin in the State of New Mexico to safety plan with.
- CYFD attempted to plan with the resource family that Hope was placed with but was unable to do so with the risk of Ms. Waggoner fleeing with Valeria.
- Valeria's Paternal family is in another state and could not be assessed.

(4) CYFD made the following efforts to determine whether there is reason to know that the child is an Indian child as defined in the Indian Child Welfare Act and its regulations:
Worker asked Ms. Waggoner and Mr. Torres and they denied ICWA.

CYFD history: Ms. Waggoner has been in custody previously. Ms. Waggoner was brought in to custody from her mother Nicolette Robinson and then adopted. Ms. Waggoner was brought back into custody in 2023.

(5) I state upon oath or affirm that the statements in this affidavit are true and correct to the best of my knowledge, information, and belief.

Signature of CYFD representative

SUBSCRIBED AND SWORN TO before me in the above county of the State of New Mexico this 25 day of Feb (*month*), 2025 (*year*).

Notary Public

STATE OF NEW MEXICO
NOTARY PUBLIC
MEGAN RHYANE BARRIO
COMMISSION # 1127303
COMMISSION EXPIRES 12/01/2027

My commission expires: Dec. 1 2027

USE NOTE

1. The paragraph about probable cause addresses the requirement to make a factual showing of abuse or neglect and that the children are not safe in the home.

2. The paragraph about reasonable efforts addresses the requirements of the federal Adoption and Safe Families Act that there be a factually specific sworn statement that details the efforts made to prevent removal of the children from the home, even if such efforts were ultimately unsuccessful.

[Rule 10-419 SCRA 1986; as recompiled and amended, effective August 1, 1999; 10-451 recompiled and amended as 10-504 by Supreme Court Order No. 14-8300-009, effective for all cases filed or pending on or after December 31, 2014.]