EXHIBIT
15



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

HOPE WAGGONER and
JAMIE TORRES,
as individuals on
behalf of V.T., a minor,

Plaintiffs,

vs. No. 3:25-cv-00166-DCG

THE NEW MEXICO CHILDREN,
YOUTH & FAMILIES DEPARTMENT
and JACOB TORRES,
in his individual capacity,

Defendants.

DEPOSITION OF HOPE WAGGONER
April 1, 2026
9:41 AM
1001 E. Lohman Avenue
Las Cruces, NM 88001

PURSUANT TO THE NEW MEXICO RULES OF CIVIL PROCEDURE this deposition was:

TAKEN BY: RAÚL A. CARRILLO, JR.
ATTORNEY FOR DEFENDANTS

REPORTED BY: Adrianell Poteet Sorrels, CSR, RPR, CRR
NM CCR #562
RUSSIN REPORTING, LLC
P.O. Box 955
Fairacres, New Mexico 88033

HOPE WAGGONER,
after having been first duly sworn under oath,
was questioned and testified as follows:

EXAMINATION

BY MR. CARRILLO:
Q. Good morning, again.
A. Good morning.
Q. Would you please state your name and spell your last name for the record.
A. It's Hope, H-O-P-E. And then Waggoner, W-A-G-G-O-N-E-R.
Q. Do you have a middle name?
A. Lynn, L-Y-N-N. And then I have a second middle name, which is Nicolette, N-I-C-O-L-E-T-T-E.
Q. All right. Thank you. What is your current address?
A. 807 North 17th Street.
Q. Is that in Las Cruces?
A. Las Cruces, New Mexico.
Q. Do you know the ZIP Code there?
A. I believe it's 88005.
Q. Okay. Today's deposition is intended to allow me to learn some things about an incident that happened just over a year ago involving yourself and a Mr. Torres and your baby, Valeria, who I understand is

Q. Okay. Where was Jamie?
A. Jamie was parked outside.
Q. So you were separated at the police station?
A. Yes.
Q. Do you know if he tried to get into the police station?
A. Not that I'm aware of. I had been texting him at that point, telling him that I wanted him to take Valeria with him. And I'm not sure if he asked them or if he told -- if he asked the police officers anything. I'm not too sure. But, yeah...
Q. Did you give your lawyer copies of any of those text messages?
A. No. I don't -- I don't have any of the text messages anymore. I've been through quite a few phones.
Q. Okay. Do you remember which number -- well, you said you did haven't service?
A. Yeah, so it was through social media.
Q. And was it through Instagram?
A. Yes.
Q. Okay. And so Jamie didn't come into the police station with you?
A. They didn't allow him to.
Q. Neither did his dad?

A. No.
Q. Okay. Was anybody else with you in the station? Did Natalia show up or Maria or anybody else?
A. No, just me and my daughter.
Q. Okay. How long do you think you were at the police station?
A. I was there from maybe 11:30 at night, 12:00, to maybe 8:00, 9:00 in the morning.
Q. During that time, were there any police officers assigned to you?
A. Assigned to me specifically, no.
Q. Did you talk with any police officers?
A. Yes. I talked with quite a few.
Q. Do you remember any of their names?
A. No, sir.
Q. Were they males and females?
A. Yes.
Q. Okay. Were you assigned an advocate, a victim's advocate?
A. No, sir.
Q. The paperwork that we've seen indicates that there was someone there, a female police officer, who's a victim's advocate by the name of Lorenza Elias. Do you remember talking with her?
A. No, not that I can remember. Not that I recall.

Q. Is there a custody order?
A. No, sir.
Q. So you've not had an argument over custody in a courtroom?
A. No, sir.
Q. Or presented a joint order where you've agreed to custody in the courtroom?
A. No, sir.
Q. What's your understanding of Judge Duran's decision that she didn't have jurisdiction? Do you have any understanding of that at all?
MR. GUBERNICK: Object to form.
A. I mean, I know that because Valeria was born in Texas and because I did not give consent to her being transported across state lines that, I mean, they had no legal jurisdiction to take her from me, or specifically to transport her across state lines.
Q. (BY MR. CARRILLO) So Valeria's too young to have a -- to say, I live in Texas or I live in New Mexico. Had you established an address in Texas, do you think?
MR. GUBERNICK: Object to form.
A. What do you mean?
Q. (BY MR. CARRILLO) Like, were you -- did you have a home in Texas?