**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

**HOPE WAGGONER and JAIME TORRES,**
**as individuals and on behalf of V.T., a minor,**

**Plaintiffs,**

**v.** **no. 3:25-cv-00166**

**JACOB TORRES,**

**Defendant.**

**AFFIDAVIT OF ABIGAIL CORDOVA**

**STATE OF NEW MEXICO** §
§
**COUNTY OF DOÑA ANA** §

I, Abigail Cordova, swear or affirm under penalty of perjury under the laws of the State of New Mexico that the following statements are true and correct:

1. My name is Abigail Cordova.
2. I am over eighteen (18) years of age, and give this statement freely and of my own accord.
3. I am employed by the New Mexico Children, Youth and Families Department ("CYFD") a Case Aid, and have been so employed for two and one-half years. I was so employed on February 20, 2025.
4. I have personal knowledge of certain facts related to the above captioned case, which I learned and observed as a direct result in my involvement in the case.
5. I was working, and on duty on February 20, 2025.
6. On the morning of February 20, 2025, I met Hope Waggoner, and VT, Plaintiffs in the above captioned case, in the offices of the Dona Anna County office of CYFD ("DAC").

EXHIBIT 17

7. Prior to meeting Hope and VT, I had been asked by Hannah Duron ("Duron"), a CYFD Permanency Worker at DAC, to provide an infant's bottle for an infant who was at DAC.
8. Although I usually keep a stock infant bottles at DAC, I did not have any, so I traveled to a local Walmart to purchase some.
9. Upon my return I entered Duron's office, met Hope and VT, and provided Hope with a bottle.
10. At the time I observed Hope, she was together with VT inside of Duron's office.
11. Hope and VT were not restrained in any way, and Hope had physical possession of VT, and was providing for VT's care.
12. I left Duron's office to attend to other duties.
13. At approximately 1:00 p.m., on February 20, 2025, I was asked to transport Hope and VT to the Memorial Medical Center ("hospital"), so VT could be examined.
14. Supervisors at DAC required that VT be examined based upon the allegation that VT had been thrown into a van earlier on the morning of February 20, 2025.
15. Hope made no objection in my presence to VT going to the hospital for examination.
16. Myself and CYFD Permanency Worker, Alyssa Noriega ("Noriega"), transported Hope and VT to the hospital.
17. VT was not in the custody of CYFD at the time I transported Hope and VT to the hospital.
18. I acted for the sole purpose of transporting Hope and VT to the hospital.
19. Noriega's presence was required because Hope was in the legal custody of CYFD.
20. When we were preparing to exit DAC, I asked Hope if she needed any help, and she declined.
21. Hope took VT, and a diaper bag with her as we all exited DAC.

22. Hope placed VT into the vehicle we were using, and fastened her in.

23. Hope had VT in her physical custody and control when we left DAC.

24. Hope rode with VT in the backseat of the vehicle on the trip to the hospital.

25. When we arrived at the hospital, Hope removed VT from the vehicle and took her into the hospital.

26. While we were all at the hospital, Hope retained physical control over VT, and provided for VT's care; changing VT's diaper and feeding her.

27. Neither I, nor Noriega, ever separated Hope and VT while we were at the hospital.

28. At one point, Hope said she needed to use the restroom, and asked Noriega and me to watch VT.

29. When Hope returned from the restroom, Hope resumed physical custody and control of VT.

30. When we left the hospital, Hope maintained VT and her physical custody and control, and transported her back to our vehicle.

31. When we arrived at the vehicle, Hope again placed VT the backseat and fastened her in.

32. On the return trip from the hospital to DAC, we took Hope to Sonic, at her request, to get her something to eat.

33. During the return trip, Hope rode in the backseat with VT.

34. We arrived at DAC at approximately 7:00 p.m. on February 20, 2025.

35. When we arrived, Noriega, Hope and VT went into DAC while I parked the vehicle.

36. Hope removed VT from the vehicle, and carried VT and her belongings into DAC.

37. After I parked the vehicle, I entered DAC and observed Hope together with VT in Noriega's office. Hope still had VT in her physical custody, and was providing for VT's care.

38. Once I re-entered DAC after parking the car, I was immediately preparing to leave to go home, and I saw an officer from the Las Cruces Police Department in the building.

39. At the time I saw the officer, Hope and VT were still in Alyssa's office, Hope still had physical custody of VT, and was providing VT's care.

40. Throughout my interaction with Hope and VT on February 20, 2025, I never saw Hope separated from VT, and never saw Noriega or any other CYFD employee attempt to separate Hope from VT, or to restrict Hope in any way from providing for VT's care.

ABIGAIL CORDOVA

STATE OF NEW MEXICO )
) ss.
COUNTY OF DONA ANA )

The foregoing affidavit was signed and sworn to or affirmed before me on this 04 day of September 2026, by Abigail Cordova.

Notarial Officer

My Commission Expires 07/27/2030

[Seal]

State of New Mexico
Notary Public
Caren Denise Davila Varela
Commission # 2010101
Commission Expires: 07/27/2030